UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MARIAN L. MAY, on behalf of<br>O.N., a minor, | )<br>)<br>) |
| Plaintiff | )<br>) |
| vs. | )    CAUSE NO. 2:08-CV-98 RM<br>) |
| MICHAEL J. ASTRUE, COMMISSIONER<br>OF SOCIAL SECURITY, | )<br>)<br>) |
| Defendant | ) |

## OPINION AND ORDER

Marian May filed an application for Supplemental Security Income on behalf of O.N., her minor grandson, alleging disability due to attention deficit hyperactivity disorder (ADHD) and learning disabilities. The application was denied initially, on reconsideration, and after an administrative hearing. Ms. May now seeks judicial review of the Commissioner of Social Security's final decision. The court has jurisdiction over this action pursuant to 42 U.S.C. § 1383(c)(3). For the reasons that follow, the court affirms the Commissioner's decision.

### BACKGROUND

In evaluating O.N.'s disability claim, the ALJ considered the documentary evidence presented at the administrative hearing and testimony from O.N., Ms. May, and Dr. Lawrence Hagerman, a medical expert, and applied the agency's standard three-step sequential evaluation to determine whether an individual under the age of 18 is disabled. 20 C.F.R. § 416.924(a). The ALJ found at steps

one and two that O.N. hadn't engaged in substantial gainful activity at any time relevant to the decision and had severe impairments, including ADHD and borderline intellectual functioning, but determined at step 3 that O.N. didn't have an impairment or combination of impairments that met, medically equaled, or functionally equaled any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (specifically Sections 112.05 and 112.11). Based on that finding, the ALJ concluded that O.N. wasn't disabled within the meaning of the Social Security Act, and wasn't eligible for SSI benefits.

The Appeals Council denied Ms. May's request for review, making the ALJ's decision the final decision of the Commissioner of Social Security. Getch v. Astrue, 539 F.3d 473, 480 (7th Cir. 2008); Fast v. Barnhart, 397 F.3d 468, 470 (7th Cir. 2005). This appeal followed.

Ms. May believes that the evidence supports a finding of disability, and asks the court to "re-entertain the facts." Unfortunately, what she asks is not within the court's power.

STANDARD OF REVIEW

The issue before the court isn't whether O.N. is disabled, but whether substantial evidence and the law support the ALJ's determination that he was not. Nelms v. Astrue, 553 F.3d 1093, 1097 (7th Cir. 2009); Cass v. Shalala, 8 F.3d 552, 555 (7th Cir. 1993). "An ALJ's findings are supported by substantial evidence if the ALJ identifies supporting evidence in the record and builds a logical bridge

2

from that evidence to the conclusion." Giles ex rel. Giles v. Astrue, 483 F.3d 483, 486 (7th Cir. 2007). If the ALJ does so, the court must affirm the Commissioner's decision. Skinner v. Astrue, 478 F.3d 836, 841 (7th Cir. 2007); Rice v. Barnhart, 384 F.3d 363, 368-369 (7th Cir. 2004); Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000). The substantial evidence standard prevents the court from "reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility" — in short, substituting its own judgment for that of the Commissioner, Williams v. Apfel, 179 F.3d 1066, 1071-1072 (7th Cir. 1999); *accord* Powers v. Apfel, 207 F.3d 431, 434-435 (7th Cir. 2000) — and requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).

## DISCUSSION

A child under the age of 18 is disabled within the meaning of the Social Security Act if he or she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations and…has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The ALJ found that O.N.'s functional limitations didn't meet, medically equal, for functionally equal the criteria of Listings 112.05 and 112.11, either alone or in combination. A review of the record demonstrates that substantial evidence and adequate reasoning support his findings.

3

The required level of severity for mental retardation for a child between the ages of 3 and 18 (Listing 112.05) is met when any one of the following requirements are satisfied:

> (a) Marked impairment in at least two of the following age-appropriate categories: cognitive/communicative function, social functioning, personal functioning, or maintaining concentration, persistence, or pace; *or* mental incapacity evidenced by dependence upon others for personal needs (grossly in excess of age-appropriate dependence) and inability to follow directions such that the use of standardized measures of intellectual functioning is precluded;
> (b) Mental incapacity evidenced by dependence upon others for personal needs (grossly in excess of age-appropriate dependence) and inability to follow directions such that the use of standardized measures of intellectual functioning is precluded;
> (c) A valid verbal, performance, or full scale IQ of 59 or less;
> (d) A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function;
> (e) A valid verbal, performance, or full scale IQ of 60 through 70, resulting in marked impairment in at least one of the following age-appropriate categories:
>> (1) social functioning
>> (2) personal functioning; or
>> (3) maintaining concentration, persistence, or pace; or
>
> (f) Marked impairment in age-appropriate cognitive/communicative function and a physical or other mental impairment imposing an additional and significant limitation of function.

20 C.F.R. Part 404, Subpart P, Appendix 1 20 C.F.R. §§ 112.05.

To satisfy the listing criteria for ADHD (Listing 112.11), there must be medically documented findings of marked inattention, marked impulsiveness, and marked hyperactivity, resulting in a least two of the following: (a) marked impairment in age-appropriate cognitive/communicative function, (b) marked impairment in age-appropriate social functioning; (c) marked impairment in age-

appropriate personal functioning; or (d) marked difficulties in maintaining concentration, persistence, or pace. 20 C.F.R. Part 404, Subpart P, Appendix 1 20 C.F.R. §§ 112.11 and 112.02(B)(2)(a)-(d).

All of the agency's medical consultants, including Dr. Hagerman, agreed that O.N.'s impairments didn't meet or medically equal the listed criteria. The court's review of the record disclosed no subjective or objective evidence to suggest otherwise.

In deciding whether O.N.'s impairments were functionally equivalent to a listing, the ALJ evaluated the severity of O.N.'s impairments in six domains — acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, caring for himself, and health and physical well-being. *See* 20 C.F.R. § 4116.926a(b)(1). To be functionally equal to a listing, O.N.'s impairments had to result in an "extreme" limitation in one domain, or "marked" limitation in two of the domains. 20 C.F.R. § 416.926a(a).[1] The ALJ found that the uncontradicted medical evidence and impartial lay opinions in the record showed that O.N. had neither, and that his impairments weren't functionally equivalent to any listing. The evidence on which the ALJ relied included a May 2004 psycho-educational evaluation to determine O.N.'s eligibility for special education services, the results of standardized testing

---

[1] A "marked" limitation exists when the impairment seriously interferes with the child's "ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(I). An "extreme" limitation is one that "interferes very seriously with [the child's] ability to independently initiate, sustain or complete activities." Id.

5

completed during that evaluation (the Wechsler Intelligence Scale for Children (WISC-IV)), a November 2004 psychiatric evaluation by O.N.'s treating psychiatrist, Dr. Mohammad Ilyas, a January 2006 mental status examination by agency consulting psychologist, Caryn Brown, childhood disability evaluations completed by agency psychologists Joseph Pressner and D. Unversaw in February 2006 and June 2006, statements from O.N.'s third and fourth grade teachers, and testimony presented at the hearing.

By all accounts, O.N. had obvious and/or serious functional limitations when he wasn't taking medication, but no evidence in the record suggests that those limitations ever rose to the level of being marked or extreme in any domain. The results of the 2004 WISC-IV test showed a full scale IQ of 77, evidencing a borderline range of intellectual ability. While O.N. demonstrated borderline skills in working memory and math computation, and low-average skills in math reasoning and written expression, all other academic areas were in the average to low-average range. Unlike the minor claimant in Hopgood v. Astrue, __ F.3d. __, 2009 WL 2591354 (7th Cir. Aug. 25, 2009), O.N. was found to be ineligible for special education services.

In November 2004, O.N. underwent a psychiatric evaluation at Southlake Center for Mental Health. Dr. Mohammad Ilyas, a psychiatrist, noted that O.N. had difficulties at school, poor insight, and poor judgment, and a current GAF

6

score of 60, and diagnosed ADHD.[2] He recommended a trial of Metadate CD, and gave O.N. a 30-day prescription. O.N. missed follow-up appointments on November 29, 2004 and January 24, 2005. When he saw Dr. Ilyas again in April 2005, Dr. Ilyas noted that O.N. hadn't taken any medication for at least four months, wasn't able to function well at school, and continued to exhibit poor insight and poor judgment. He gave O.N. a 30-day prescription for Metadate CD and directed him to return in a month. At the follow-up appointment on May 9, 2005, Dr. Ilyas reported that O.N. was tolerating the medication well, without side effects, gave him a 30-day prescription for Metadate CD, recommended supportive and cognitive therapy, and asked him to return in another month.

O.N. moved to Indianapolis in June 2005 to live with his mother. In a note dated September 6, 2005, Dr. Ilyas noted that O.N. was being discharged because of poor compliance with the prescribed course of treatment.

O.N. returned to his grandmother's home in October 2005 and resumed treatment at Southlake Center for Mental Health in December 2005, under Dr. Marcus Wigutow's care. Dr. Wigutow once again prescribed Methadate CD. He reported in February 2006 that O.N. was "more relaxed, pa[id] attention, listening

---

[2] The GAF scale goes from 0-90, and reports a "clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 32 (4th Ed. Text Rev.2000). Sims v. Barnhart, 309 F.3d 424, 427 n.5 (7th Cir. 2002). A GAF score of 60 indicates "moderate symptoms" or "moderate difficulty in social, occupational, or school functioning," American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (4th Ed. Text Rev.2000), and is consistent with the limitations found in the state agency psychologists evaluations and relied upon by the ALJ.

more, more appropriate," and in November 2006 that O.N. was reportedly receiving As, Bs and Cs in school.

In a questionnaire completed on December 5, 2005, Kimberly Naspinski, O.N.'s fourth grade teacher, indicated that O.N. had problems ranging from very serious to slight in 12 of 13 categories in domain 2 (attending and completing tasks); serious to no problems in domain 3 (interacting and relating with others); obvious problems in 2 out of 10 categories in domain 5 (caring for self); and no problems in acquiring and using information, moving about and manipulating objects, or health and physical well-being (domains 1, 4 and 6). O.N.'s third grade teacher provided similar responses in a questionnaire she completed in September 2003. Both questionnaires were completed before O.N. began taking medication for ADHD.

During a February 2006 telephone interview, Ms. Naspinski reported that O.N. began taking medication just before the holidays, and that she'd seen a marked improvement in his behavior in class–he was less disruptive and caused fewer problems. Ms. Naspinski noted that there had been a drastic shift in his performance since he'd been on medication.

Agency reviewing psychologists Joseph Pressner and D. Unversaw completed disability evaluations in February and June 2006 in which they opined the O.N.'s impairment didn't meet, medically equal, or functionally equal a listed impairment because his functional limitations were "less than marked." Their opinions are consistent with, and supported by, the evaluations and course of

treatment prescribed by O.N.'s treating psychiatrists, Dr. Ilyas and Dr. Wigutow, the psycho-educational evaluation completed in May 2004 and results of standardized testing completed then, opinions offered by O.N.'s teachers, expert medical testimony at the administrative hearing, and O.N.'s overall performance.

Balanced against this evidence were the statements and testimony provided by O.N.'s grandmother, Ms. May. The ALJ found that her statements concerning the intensity, persistence and limiting effects of the claimant's symptoms weren't credible and didn't support a finding of disability. The court must defer to the ALJ's decision if substantial and convincing evidence supports it, <u>Sims v. Barnhart</u>, 442 F.3d 536, 537 (7th Cir. 2006), and cannot overturn a credibility determination unless it's clearly incorrect. <u>Zurawski v. Halter</u>, 245 F.3d at 887; <u>Powers v. Apfel</u>, 207 F.3d 431, 435 (7th Cir. 2000). Ms. May's testimony was in many respects vague, inconclusive, and inconsistent with the other evidence of record. Under the circumstances, the court can't find that the ALJ's assessment of Ms. May's credibility was patently wrong.

## CONCLUSION

For the foregoing reasons, the court AFFIRMS the decision of the Commissioner of Social Security.

SO ORDERED.

ENTERED:   September 23, 2009

9

/s/ Robert L. Miller, Jr.
Chief Judge
United States District Court